JOHN ALPAR v. WEYERHAEUSER COMPANY, INC. AND GEORGE P. FINGER AND D. N. JEFFERS

No. 732SC778

(Filed 9 January 1974)

1. **Rules of Civil Procedure § 8— pleading inconsistent defenses — necessity for election**

To require a defendant who has pleaded inconsistent defenses to elect between them prior to trial would render meaningless Rule 8(e)(2) of the Rules of Civil Procedure; therefore, defendants in a libel and slander action could plead the defenses of privilege and non-utterance without being required to elect between them prior to trial.

2. **Libel and Slander § 14; Rules of Civil Procedure § 9— pleading defense of truth and/or mitigating circumstances**

Rule 9(i)(2) of the Rules of Civil Procedure does not require defendant in a libel and slander action to reveal whether he intends to prove the defense of truth; rather, the rule allows the defendant to plead and prove truth and/or other mitigating circumstances.

3. **Trial § 57— trial without jury — incompetent evidence not considered**

In a trial before the judge without a jury if incompetent evidence is admitted, the presumption arises that it was disregarded and did not influence the judge's findings.

4. **Appeal and Error § 57— trial court's findings binding on appeal**

Trial judge's findings supported by competent evidence are binding on appeal.

5. **Libel and Slander §§ 2, 9— publication libelous per se — privilege**

A publication is libelous *per se*, if when considered alone without innuendo, it tends to impeach one in his trade or profession; however, liability for such a defamatory statement can be avoided if the remark is afforded the protection of absolute or qualified privilege.

6. **Libel and Slander § 9— qualified privilege**

A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, but the privilege may be lost by proof of actual malice on defendant's part or excessive publication by defendant.

Alpar v. Weyerhaeuser Co.

7. **Libel and Slander § 10— libelous statement — qualified privilege**

Statement by defendant who was employed by corporate defendant as plaintiff's supervisor that plaintiff was clinically paranoid, though libelous *per se*, was qualifiedly privileged because the statement was made without malice in the corporate interest to five people who had a duty to perform with respect to plaintiff and his employment with the corporate defendant.

APPEAL by plaintiff from *Cowper, Judge,* 20 February 1973 Session of Superior Court held in BEAUFORT County.

This is a civil action instituted by the plaintiff, John Alpar, against the defendants George P. Finger, D. N. Jeffers, and Weyerhaeuser Co., Inc. (defendant corporation), in which the plaintiff alleges that he was slandered and libeled by the defendants. Plaintiff, an employee of the defendant corporation until he was fired in March of 1971, contends that the defendant Finger, plaintiff's immediate superior at Weyerhaeuser Co., Inc., slandered the plaintiff, and that those slanderous statements were attributable to the corporate defendant. Furthermore, plaintiff maintains that defendant Jeffers, another employee of the defendant corporation who supervised plaintiff and defendant Finger, published a libelous letter and also uttered a slanderous statement both of which were attributable to the defendant corporation. Finally, plaintiff asserts that he was also slandered by statements made by the defendant corporation.

The defendants filed an answer in which they denied making any slanderous or libelous statements but further stated that if such defamatory remarks were found to have been made by them, then such statements were true and they were privileged. By agreement of the parties, the case was heard by the presiding judge without a jury.

The plaintiff offered evidence which tended to show the following:

Plaintiff, an Hungarian immigrant, testified that he had lived in the United States since 1951, and that during this period he had held various positions in which he could utilize his training in forestry and horticulture. Plaintiff was employed in 1970 by defendant corporation for the purpose of installing a new tree nursery and putting it into operation, and he continued in this capacity until his dismissal in March of 1971. The alleged slanderous and libelous statements of defendants were made just prior to and at the time of the discharge of plaintiff. These

defamatory remarks included: (1) Three separate slanderous statements made by defendant Finger to Mrs. Mary Pruett, an office secretary of the defendant corporation, which described the plaintiff as "crazy" or "mentally ill"; (2) An interoffice communication received by plaintiff and five employees of Weyerhaeuser Co., Inc., from defendant Jeffers which advised that the plaintiff was clinically paranoid and further stated that the writer had discussed the case with a neighbor of his in Tacoma, Washington; (3) Slanderous statements made by the defendant corporation to certain guards who were allegedly hired to protect the property of defendant corporation from possible infliction of damage by plaintiff after the discharge of the latter.

After his dismissal from the defendant corporation, plaintiff made several attempts to secure employment in a similar capacity; but these efforts proved futile due to the lack of jobs in his particular specialty field.

Defendant offered the following evidence: Plaintiff's initial application for employment with the defendant corporation was rejected; however, after an emotional plea by the plaintiff, the application of plaintiff was reconsidered, and he was hired. Within a few months of his employment, the defendant corporation expressed dissatisfaction with plaintiff's performance as a result of plaintiff's inability to handle personnel problems, his inability to establish a line of authority among the employees he supervised, and the constant turnover of employees who worked under the guidance of the plaintiff.

Defendant Finger, plaintiff's immediate superior, testified that he never called plaintiff a "crazy Hungarian" or "crazy" and denied making the statement, "You are sick, you are mentally ill, I can prove it." Defendant Jeffers admitted discussing the Alpar case with his neighbor who was active in social and psychological work in Tacoma, Washington, but denied having ever mentioned plaintiff's name in the course of their conversation. The neighbor said, "It sounds like the man might have a problem with paranoia." Defendant Jeffers then prepared an interoffice memorandum, making six copies, none of which was intended to be received by plaintiff. In this memorandum the defendant Jeffers gave his opinion that the plaintiff Alpar was clinically paranoid. This document was intended to be seen only by members of the company, and Jeffers could not explain how

a copy happened to be mailed to the plaintiff in Washington, N. C., if in fact, a copy was mailed to the plaintiff at all.

Defendants also offered the testimony of Mrs. Mary Pruett, the office secretary, who stated that she had never heard defendant Finger or any other company official make a statement to the effect that plaintiff was mentally ill or crazy. She further testified that plaintiff was emotionally unstable, subject to fits of temper, and that she was personally afraid to be alone in his presence.

Upon completion of the presentation of the evidence, the trial judge made findings of fact and the following pertinent conclusions of law:

"1. That the Defendant George P. Finger made no defamatory utterances with regard to the Plaintiff John Alpar."

"2. That the Defendant George P. Finger did not slander the Plaintiff John Alpar."

"3. That the letter dated March 8, 1971, written by the Defendant D. N. Jeffers contained certain statements which were defamatory in nature and libelous *per se* but that the Court does conclude as a matter of law that said letter was written without malice and was qualifiedly privileged in that all the persons to whom said letter was addressed and who in fact saw said letter had a genuine legal and corporate interest in and duty to perform concerning the Plaintiff John Alpar and his relations and employment with the Defendant Weyerhaeuser Company . . . . "

"4. That the Defendant D. N. Jeffers did not slander the Plaintiff John Alpar in his conversation with his neighbor in view of finding of fact that he did not identify the Plaintiff John Alpar to his neighbor and further in view of the fact that his neighbor lived more than 3,000 miles from the Plaintiff John Alpar."

"5. That neither Defendant Weyerhaeuser Company nor any agent of Weyerhaeuser Company has been shown to have defamed, slandered or libeled the Plaintiff John Alpar."

"6. That the Plaintiff John Alpar by his own evidence and the testimony of his own witnesses has in no wise been

injured, harmed, or damaged in person, reputation, career or in any other respect by Defendant George P. Finger, Defendant D. N. Jeffers, or Defendant Weyerhaeuser Company, or by any agent of the Defendant Weyerhaeuser Company or by any of the Defendants individually or collectively in any respect whatsoever."

From an adverse judgment, the plaintiff appealed.

*Wilkinson, Vosburgh & Thompson by John A. Wilkinson for plaintiff appellant.*

*Hutchins & Romanet by Andrew L. Romanet, Jr., and R. Wendell Hutchins for defendant appellees.*

HEDRICK, Judge.

[1]  By his first assignment of error plaintiff contends (a) that the trial court erred in failing to make the defendants elect between the defenses of privilege and nonutterance and (b) that the trial court also erred in failing to require the defendants to state, prior to the presentation of the evidence, whether they were relying upon truth as a defense or were abandoning that defense. Plaintiff in part (a) of this assignment of error does not dispute the fact that defendant can plead alternative, inconsistent defenses but rather he maintains that defendant make an election between the two defenses prior to trial. We cannot agree with this approach. G.S. 1A-1, Rule 8(e)(2), Rules of Civil Procedure, declares in part:

> "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both . . . . "

If we were to accept the argument proffered by plaintiff, what possible significance would G.S. 1A-1, Rule 8(e)(2), Rules of Civil Procedure, have? Obviously, adherence to plaintiff's viewpoint would render Rule 8(e)(2) meaningless, as we would be placed in the incongruous position of saying that you can plead inconsistent defenses but you cannot prove the same.

[2]  The second segment of plaintiff's first assignment of error is bottomed upon plaintiff's contention that the uncertainty as

to whether he would be confronted by the defense of truth forced him during the course of the entire trial, at great expense, to keep in court the head of the State Hospital from Madison, Indiana. Also, plaintiff claims that because of the inability to ascertain whether truth would be a defense, the trial judge allowed the evidence to wander almost endlessly in a maze. As in our discussion of the first portion of this assignment of error, we also find this argument to be without merit. This challenge requires that reference be made to G.S. 1A-1, Rule 9 (i) (2), Rules of Civil Procedure, which reads as follows:

> "The defendant may in his answer allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; *and whether he proves the justification or not, he may give in evidence the mitigating circumstances.*" (Emphasis added.)

Clearly, this statute does not require the defendant to reveal whether he intends to prove the defense of truth, and in fact, the latter portion of this Rule allows the defendant to plead and prove truth and/or other mitigating circumstances. For the reasons stated above this assignment of error is overruled.

[3, 4] Many of the 85 assignments of error discussed in the plaintiff's brief concern the admission or exclusion of evidence by the trial court. By agreement of the parties, this case was heard by the presiding judge without a jury, and "in a trial before the judge without a jury, the ordinary rules as to the competency of evidence which are applicable in a jury trial are to some extent relaxed, since the judge with knowledge of the law is able to eliminate incompetent and immaterial testimony, but if incompetent evidence is admitted the presumption arises that it was disregarded and did not influence the judge's findings." 7 Strong, N. C. Index 2d, Trial, § 57, p. 377. Upon completion of the presentation of the evidence, the trial judge properly made findings of fact and conclusions of law. A careful review of the record does not affirmatively disclose that the trial judge's findings were influenced by the admission of any evidence which might possibly be termed incompetent and, furthermore, each of the facts found is supported by competent evidence and thus binding upon this court. *Mayo v. Casualty Co.,* 282 N.C. 346, 192 S.E. 2d 828 (1972) ; *Vaughn v. Tyson,* 14 N.C. App. 548, 188 S.E. 2d 614 (1972).

[5-7] Next, we must consider whether the facts found support the conclusions of law entered by the court. First, there are suf-

ficient findings of fact to support the conclusion that defendant Finger made no defamatory utterances with regard to plaintiff. Turning to the conclusion made concerning the letter sent from defendant Jeffers to plaintiff, we are of the opinion that the court was correct in determining the letter to be libelous *per se* but qualifiedly privileged. "The decisions in this jurisdiction, as well as others, clearly establish that a publication is libelous *per se,* or actionable *per se,* if when considered alone without innuendo: * * * (4) it tends to impeach one in his trade or profession." *Flake v. News Co.,* 212 N.C. 780, 787, 195 S.E. 55, 60 (1937). Liability for such defamatory statements can be avoided if the remarks are afforded the protection of absolute or qualified privilege. The statement made by the defendant Jeffers, although found to be libelous *per se,* was qualifiedly privileged because the statement was made in the corporate interest. A recent N. C. Supreme Court decision, *Stewart v. Check Corp.,* 279 N.C. 278, 182 S.E. 2d 410 (1971), quoted with approval the following passage from 50 Am. Jur. 2d, Libel and Slander, § 195 (1970) : "A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest . . . . " See Also, Prosser, Law of Torts, § 115, pp. 789-790 (4th ed. 1971) ; Annot. 98 A.L.R. 1301 (1935). Although a qualified privilege may provide an affirmative defense against a defamation action, if the qualified privilege is found to be abused, then the privilege ceases to exist. The qualified privilege may be lost by proof of actual malice on defendant's part or excessive publication by the defendant. The trial judge properly concluded, based on the facts found, that the qualified privilege in this case was not waived by a showing of actual malice or excessive publication. Finally, we agree with the trial court's conclusions that the remarks made by the defendant Jeffers to his neighbor were not slanderous and also that defendant corporation has not been shown to have defamed, slandered, or libeled the plaintiff.

The judgment appealed from is

Affirmed.

Judges MORRIS and VAUGHN concur.